**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **RONNIE GULLY, JR., # B-88170,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 18-cv-539-NJR |
| ) | |
| **DEREK HUNDLEY,** ) | |
| **TRENT RALSTON,** ) | |
| **RANDALL D. BAYLOR,** ) | |
| **EARL DIXON,** ) | |
| **JEFFEREY MOLENHOUR,** ) | |
| **MS. BASINETTE,** ) | |
| **GIVENS,** ) | |
| **JANA CARIE,** ) | |
| **ELDON COOPER,** ) | |
| **and NICOLAS LAMB,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff, an inmate of the Illinois Department of Corrections currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His claims, which include retaliation, deliberate indifference to medical needs, and imposition of punishment without due process, arose during his confinement at Lawrence Correctional Center ("Lawrence"). The Complaint is now before the Court for a preliminary review pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief.

1

28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

Plaintiff suffers from asthma and high blood pressure. On October 11, 2017, he told C/O Ralston that he was short of breath, having sharp chest pain, and needed medical attention. He

told Ralston that he had standing medical orders to get a breathing treatment when he got short of breath. (Doc. 1, p. 79). Ralston indicated he would see if a lieutenant could take Plaintiff to health care after the inmates returned to the housing unit from the chow line. At Plaintiff's request, Ralston secured Plaintiff in the shower area so he could watch him until the lieutenant arrived.

About an hour later, Lieutenant Hundley came to take Plaintiff to health care. Plaintiff had previously sued Hundley over a December 2016 disciplinary ticket. (Doc. 1, p. 80); *Gully v. Hundley, et al.*, Case No. 15-cv-211-DRH-SCW (S.D. Ill.). Hundley ordered Plaintiff to cuff up and asked why Plaintiff hadn't locked up when his officer ordered him to do so. Plaintiff protested that he had never been given such an order, and that Ralston had locked him in the shower. Hundley yelled for Plaintiff to cuff up, and Plaintiff did. (Doc. 1 p. 81). Hundley threatened to write Plaintiff "another ticket" if he was lying about his orders for breathing treatments. Plaintiff claims that Hundley intentionally delayed getting him to health care against prison policy that called for a "code 3 medical emergency" response to symptoms of chest pain and breathing problems. (Doc. 1, pp. 80-81).

Nursing staff found that Plaintiff's blood pressure was "exceptionally high." (Doc. 1, p. 81). Hundley and Baylor disrupted Plaintiff's treatment, yelling to the nursing staff that Plaintiff was faking. (Doc. 1, p. 82). Plaintiff yelled back, and the nurse told them to get out. Hundley and Baylor then took Plaintiff to segregation. (Doc. 1, p. 83). When Plaintiff protested, Hundley said he would "bury [Plaintiff's] a** under the seg unit." *Id.* When they got to segregation, Hundley added, "I'll be getting back to you shortly[,] my reach is very far." *Id.*

Hundley, Dixon, Baylor, and Ralston issued five separate disciplinary tickets to Plaintiff based on the events of October 11, 2017, including disobeying a direct order, intimidation,

threats, and dangerous disturbances. (Doc. 1, pp. 39-40, 83-84).

On October 16, 2017, Basinette (Mental Health Associate) fabricated a report that Plaintiff was suicidal, despite Plaintiff's "relentless" arguments that he did not want to kill himself. (Doc. 1, p. 84). Givens threatened to call in the Orange Crush team to force Plaintiff out of his cell, so Plaintiff ultimately agreed to go to the suicide housing unit. He was placed in a cell that had urine, feces, and blood smeared on the walls, semen stains on the mattress, and a terrible foul odor. (Doc. 1, p. 85). Later that day, Basinette came and told Plaintiff that she put him on suicide watch to teach him a lesson, because she heard of his situation with her friend Hundley, who has "a far reach." *Id.* Plaintiff remained in the contaminated watch cell for 48 hours, without clothes to protect him from the cold. Plaintiff asserts that Basinette's purpose was to harass, degrade, and torture him, and that her actions amounted to intentional infliction of emotional distress. (Doc. 1, p. 86).

On October 31, 2017, Plaintiff's disciplinary tickets were heard by Carie and Cooper. Plaintiff requested to call an Internal Affairs officer as a witness, but the witness was never called. (Doc. 1, pp. 86-87). Plaintiff submitted a written statement in his defense and pled not guilty to all charges except for a threat to Hundley. (Doc. 1, pp. 41-53; 86-87). Carie made comments to the effect that Plaintiff was not believable, indicating to Plaintiff that the hearing committee was not impartial.

Carie and Cooper found Plaintiff guilty. (Doc. 1, pp. 76-78). He was punished with an extra 30 days on his sentence before he would be eligible for supervised release (Plaintiff explains that he does not have "good time" to revoke, because he is serving a sentence at 100%). (Doc. 1, p. 88). His punishment also included 90 days in segregation and 180 days' loss of gym, phone, recreation, and commissary privileges. Plaintiff's segregation cell was infested with

spiders and rats, and he was not provided with cleaning supplies or personal hygiene items. He was then moved to Pinckneyville, a transfer which he characterizes as "retaliatory." (Doc. 1, p. 89). The transfer was listed among the punishments resulting from the disciplinary action. (Doc. 1, p. 77). Plaintiff seeks to hold Warden Lamb responsible for the alleged due process violations because he signed off on these punishments, and for the unsanitary segregation conditions. *Id.*

Plaintiff seeks compensatory, punitive, and nominal damages. (Doc. 1, p. 90).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Ralston and Hundley, for delaying Plaintiff's medical treatment for his breathing problems and chest pain;
>
> **Count 2:** First Amendment retaliation claim against Hundley, for intentionally delaying Plaintiff's medical treatment and issuing a disciplinary ticket because Plaintiff sued Hundley;
>
> **Count 3:** First Amendment retaliation claim against Basinette and Hundley, for placing Plaintiff in a filthy suicide-watch cell to punish him for suing Hundley;
>
> **Count 4:** State law claim for intentional infliction of emotional distress against Basinette, for placing Plaintiff in a filthy suicide-watch cell when he was not suicidal;
>
> **Count 5:** Eighth Amendment claim against Basinette and Givens for housing Plaintiff in a suicide-watch cell contaminated with human waste

5

>and bodily fluids;

**Count 6:** Fourteenth Amendment due process claim against Hundley, Dixon, Baylor, and Ralston, for filing false disciplinary charges, and against Carie, Cooper, and Lamb, for finding Plaintiff guilty and punishing him in violation of procedural requirements;

**Count 7:** Eighth Amendment claim against Lamb for confining Plaintiff in a vermin-infested cell while he was in segregation.

Count 1, a portion of Count 2, and Counts 3-5 shall proceed for further review in this action. For the reasons explained below, however, Counts 6 and 7 fail to state a claim upon which relief may be granted and will be dismissed without prejudice.

**Count 1 – Deliberate Indifference – Ralston & Hundley**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show (1) that he suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. A medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

"Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112

F.3d 262, 267 (7th Cir. 1997).

In this case, Plaintiff's chest pain and shortness of breath were objectively serious symptoms, and a lay person would understand the need for prompt medical attention. Further, Plaintiff's condition was serious enough for his medical providers to issue a standing order for him to receive a breathing treatment when he experienced shortness of breath. The Complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the Defendants acted or failed to act with deliberate indifference to a known risk of serious harm.

Plaintiff states that due to Ralston's and Hundley's "lethargic" response time to his request for medical care, he was not taken to see a medical professional until more than an hour and a half after he reported his symptoms. (Doc. 1, pp. 79, 81). Plaintiff further asserts that Hundley deliberately delayed taking him to health care, while he was wheezing and having severe chest pain. (Doc. 1, p. 80-81). At this stage, Plaintiff has stated a deliberate indifference claim against Ralston and Hundley that merits further review, and **Count 1** shall proceed.

**Count 2 – Retaliation – Hundley**

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint

7

states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Plaintiff filed a lawsuit against Hundley in February 2017 (Case No. 17-cv-211-DRH-SCW) that was pending at the time of the events described in this Complaint. Plaintiff alleges that Hundley delayed taking him to get medical care because of a desire to retaliate against him for pursuing the lawsuit. Such retaliatory action could violate Plaintiff's constitutional rights, thus this portion of **Count 2** may proceed for further consideration.

Plaintiff also claims that Hundley wrote him a disciplinary ticket as another form of retaliation for Plaintiff's lawsuit. Plaintiff includes a ticket signed by Hundley, charging him with 106-Indimidation or threats, and 215-Disobeying a direct order, for their October 11, 2017, encounter. (Doc. 1, pp. 36-37). Those charges were combined with charges filed by other officers and heard together by the Adjustment Committee. (Doc. 1, pp. 76-78). Plaintiff pled guilty to the "Intimidation or Threats" charge (classified as a 206 offense on the final disciplinary report) for his statements to Hundley. This undermines his claim that the disciplinary charge was false and brought only as retaliation.

Furthermore, as discussed below under Count 6, the doctrine of *Heck v. Humphrey*, 512 U.S. 477 (1994), dictates that Plaintiff cannot obtain damages arising out of a disciplinary "conviction" where the punishment affected the length of his sentence, if an award of damages would imply the invalidity of the disciplinary action. *Heck* bars a prisoner from pursuing such an action for damages unless the disciplinary action has been overturned and the sentence credits restored. *See Muhammad v. Close*, 540 U.S. 749, 750-51 (2004); *Edwards v. Balisok*, 520 U.S. 641 (1997); *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) ("the ruling in a prison

disciplinary proceeding is a conviction" for purposes of the *Heck* analysis).

The theory that Plaintiff's disciplinary "conviction" was improper – because Hundley issued the ticket to retaliate against Plaintiff – amounts to an attack on the validity of the disciplinary action. There is no indication that the guilty finding or Plaintiff's punishment has been reversed or invalidated. To allow Plaintiff to seek damages for this alleged act of retaliation would therefore violate *Heck*. Accordingly, the portion of **Count 2** that is based on Hundley's issuance of the October 11, 2017, disciplinary ticket is dismissed without prejudice.

### Count 3 – Retaliation – Basinette & Hundley

Plaintiff alleges that after Basinette forced him to go on suicide watch in spite of his protests, she told him that she knew he was not suicidal, but her "objective was just to teach [Plaintiff] a lesson." (Doc. 1, p. 85). She then said that she knew about Plaintiff's conflict with Hundley, he was her friend, and "he does have a far reach[,] you see where you are today huh?" *Id.* These comments indicate that Basinette's placement of Plaintiff in the suicide watch cell under onerous conditions was an act of retaliation for Plaintiff's lawsuit against Hundley. Further, it suggests Hundley's involvement in the placement. At this stage, Plaintiff may proceed with the retaliation claim in **Count 3** against Basinette and Hundley.

### Count 4 – Intentional Infliction of Emotional Distress

This claim is based on the same facts underlying Count 3 – that Basinette placed Plaintiff in the filthy suicide-watch cell without adequate clothing in chilly temperatures in order to "teach him a lesson" – not because he was truly suicidal. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512

F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc*., 72 F.3d 1294, 1299 (7th Cir. 1995)). That connection is present here, and the Court has supplemental jurisdiction over Plaintiff's claim for intentional infliction of emotional distress against Basinette.

Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion . . . calculated to cause severe emotional distress to a person of ordinary sensibilities.'" *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla*., 100 So. 2d 396 (Fla.1958)). *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker*, 256 F.3d at 490 (citing *Kolegas v. Heftel Broad. Corp*., 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. Ct. 1993). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

Plaintiff's Complaint arguably alleges each of the components of this state-law claim, including that his placement in the filthy watch cell caused him to be in a "more depressed hopeless state" than before. (Doc. 1, p. 85). The claim in **Count 4** against Basinette for intentional infliction of emotional distress also survives § 1915A review and shall proceed.

### Count 5 – Unsanitary Suicide Watch Cell

The Eighth Amendment prohibition on cruel and unusual punishment forbids unnecessary and wanton infliction of pain, and punishment grossly disproportionate to the severity of the crime. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Two elements are required to establish a violation of the Eighth Amendment's cruel and unusual punishments clause with regards to any conditions of confinement in prison. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective conditions must have resulted in an unquestioned and serious deprivation of basic human needs such as food, medical care, sanitation, or physical safety. *Rhodes*, 452 U.S. at 347. The second requirement is a subjective element – establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842. The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842. It is well-settled that mere negligence is not enough. *See, e.g., Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

Plaintiff states that Basinette and Givens forced him into the suicide-watch cell, which was contaminated with human waste and blood smeared on the walls, had semen stains on the mattress, and reeked of a foul odor. He was left there for two days without any clothing, in cold temperatures. These conditions appear to meet the objective factor of posing an excessive risk to Plaintiff's health. *See Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner held in cell for three to six days with no working sink or toilet, floor covered with water, and walls

smeared with blood and feces); *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (inmate held for three days in cell with no running water and feces smeared on walls).

As to the subjective component of his claim, Plaintiff does not explicitly state whether he informed Basinette or Givens of the unsanitary conditions or requested clothing or blankets to protect him from the cold. But Givens presumably saw and/or smelled the cell when he placed Plaintiff there. Basinette was also present at the cell when she spoke to Plaintiff about teaching him a lesson, and she may have been there when he first entered the cell. If Plaintiff can show that either or both of these individuals were aware of the conditions but kept Plaintiff in the cell anyway, this would indicate that they were deliberately indifferent to the risk of harm to him. **Count 5** may therefore proceed.

### Dismissal of Count 6 – Due Process

Under certain limited circumstances, an inmate punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). Here, Plaintiff claims that some of the disciplinary charges brought by Hundley, Dixon, Baylor, and Ralston were false. He further alleges that Carie and Cooper failed to follow due process requirements when they denied his request to call a prison staff member as a witness, and because they were biased against him. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (to satisfy due process concerns, inmate must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, a hearing before an impartial panel, and a written statement of the reasons for the discipline imposed).

Even if the disciplinary hearing was procedurally flawed, Plaintiff would still have to show that his 90-day confinement in segregation imposed "atypical and significant

hardship[s] . . . in relation to the ordinary incidents of prison life," in order to state a constitutional claim for deprivation of a liberty interest without due process. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Marion*, 559 F.3d at 697-98.

But in this case, the *Heck* doctrine precludes any consideration of his civil rights claim for damages based on this disciplinary action. *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* directs that a plaintiff may not seek damages based on an allegedly unconstitutional conviction or imprisonment, unless the conviction or sentence has first been reversed on appeal, expunged, or otherwise invalidated. A claim for damages that implies the invalidity of a conviction or sentence cannot be maintained so long as the conviction or sentence still stands. *Heck v. Humphrey*, 512 U.S. at 486-87. Such a claim must be dismissed without prejudice, so that it may be filed again in the event that the conviction or sentence is reversed or invalidated in the future. *See Polzin v. Gage*, 636 F.3d 834, 839 (7th Cir. 2011).

In the context of a prison disciplinary action, a ruling imposing punishment is the equivalent of a "conviction." *Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011). The Supreme Court applied *Heck* to prison disciplinary proceedings where the punishment includes loss of good conduct credits, which have the effect of extending the term of imprisonment. The Court ruled that claims which "necessarily imply the invalidity of the deprivation of [the prisoner's] good-time credits" are not actionable under § 1983 unless the prison disciplinary decision has been invalidated, even though the restoration of credits is not sought as a remedy. *Edwards v. Balisok*, 520 U.S. 641, 646-68 (1997). *See also Muhammad v. Close*, 540 U.S. 749 (2004).

In this case, Plaintiff's punishment included the extension of his sentence for an additional 30 days. (Doc. 1, pp. 78, 88). The Complaint indicates that this punishment has not been reversed or expunged. Therefore, under the authority discussed above, Plaintiff cannot

maintain an action seeking damages based on this disciplinary action. **Count 6** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Dismissal of Count 7 – Unsanitary Segregation Cell

Plaintiff alleges that his segregation cell was infested with spiders and rats. He was not given sufficient hygiene supplies (toothbrush and dental floss), and he was not given cleaning supplies. The noise from fellow segregation inmates who screamed and banged on the metal doors deprived Plaintiff of sleep and elevated his blood pressure. These conditions might violate Eighth Amendment standards. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (denial of access to "adequate sanitation and personal hygiene items" may demonstrate a deprivation of "the minimal civilized measure of life's necessities"); *Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012) (depending on severity, duration, nature of the risk, and susceptibility of the inmate, prison conditions – such as vermin infestation – may violate the Eighth Amendment if they caused either physical, psychological, or probabilistic harm).

However, Plaintiff fails to connect this claim to any Defendant who was directly responsible for the conditions in his segregation cell. As such, the Court cannot evaluate the subjective component of the claim, that is, whether any prison official knew of the conditions yet failed to correct them. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Plaintiff does not allege that he informed any official of the conditions that may have placed his health or safety at risk. While he asserts that Warden Lamb is ultimately responsible for the cell conditions because the prison is under his control, this is not sufficient to impose liability on Lamb. The doctrine of *respondeat superior* (supervisory liability) is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Plaintiff does not claim to

have had any communication with Lamb that would have put him on notice of the conditions.

For these reasons, **Count 7** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Dismissal of Molenhour

Plaintiff names Internal Affairs Officer Molenhour among the Defendants, but does not mention him at all in the statement of claim. (Doc. 1, pp. 3, 79-89). Plaintiffs are required to associate specific defendants with specific claims, so that defendants are put on notice of the claims brought against them and so they can properly answer the complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8(a)(2). Where a plaintiff has not included a defendant in his statement of the claim, the defendant cannot be said to be adequately put on notice of which claims in the complaint, if any, are directed against him. Furthermore, merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Accordingly, Molenhour will be dismissed from this action without prejudice.

### Pending Motion

The motion for service of process at government expense (Doc. 3) is **TERMINATED AS MOOT**. No such motion is necessary for a Plaintiff who has been granted leave to proceed *in forma pauperis* ("IFP"). The Court shall order service on all defendants who remain in the action following threshold review. 28 U.S.C. § 1915(d).

### Disposition

The portion of **COUNT 2** based on Hundley's alleged retaliatory disciplinary charge is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. The remainder of the retaliation claim in **COUNT 2** (delaying Plaintiff's transport to health care)

shall proceed as described above.

**COUNTS 6 and 7** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**BAYLOR, DIXON, MOLENHOUR, CARIE, COOPER,** and **LAMB** are **DISMISSED** from this action without prejudice.

The Clerk of Court shall prepare for **HUNDLEY, RALSTON, BASINETTE,** and **GIVENS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate

Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Wilkerson for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: April 18, 2018**

*[signature: Nancy J. Rosenstengel]*

**NANCY J. ROSENSTENGEL**
**United States District Judge**